But they fixed the bone in place. They screwed it down. So you didn't need to know where the bone was. Its position never changed. The improvement here was to allow the bone, the work piece, the term that's used in the patent, or target sometimes, allow that work piece to move. And once it's moving, then you need to know its position relative to the cutting tool. Just curious, does Blue Belt have any patent claims that talk about tracking position data, tracking the position of the work piece? There certainly are some of the dependent claims in this patent even that talk about requiring at least three positions and some other elements in this patent. I don't know whether you're talking about just this in this patent or other patents. If this patent were your entire portfolio, it sounds like in this patent there are claims that are directed to, devoted to, tracking a specific kind of data, the data you're looking at, position, location data, coordinate systems, and all of that. Right. There's a number of claims in this patent. We have others. So I guess it's up to us to try to figure out why does tracking data have to necessarily mean that particular kind of data in this broad claim. Yes, Your Honor. I think what the board did and what the petitioner had done was to divorce the term track from the rest of the claim and also divorce it from the specification. Yes, there is a dictionary definition where the word track can have a number of reasons, a number of meanings. There are a couple of examples in this patent where they used the word track to look at something other than its position. Like there's the example where they're talking about the motor of the cutting tool. But when you have pretty clear disclosure in a number of places that every time you're talking about the work piece and tracking the work piece, what you care about is its position. It's in the summary of the invention, it's in the background, and it's in a number of places in the detailed description where the phrase tracking the work piece is later referred to essentially as its position. For example, it starts in the background of the invention in column 1, 28 to 35, where it's saying, you know, fixation in robotic systems can be used, but you do not track the target. So they're juxtaposing tracking of the target where you need to know its position with a system where it's fixed and you don't. But when you have a dispute as to the scope of particular claims, isn't the most direct path to narrow the scope by amendment rather than argue to the board and then to us that it should be read one way or another? That is certainly one path, Your Honor, but as you know, there are consequences to making a claim that has been enforced for a number of years, and if you make an amendment at the Patent Office, you relinquish certain rights and there are potential intervening rights, and we believe that the language of the claim as written in light of this specification is already clear. The answer would be true in every appeal where you come up on a claim construction that you could certainly have amended the claim even in this IPR proceeding, but when you believe that the claim term is clear in light of the specification, you shouldn't have to. It would be our position, Your Honor. There's no express definition in the specification for the term tracking data, right? Well, and Your Honor, just to be clear, we believe that we need to have the term tracking data associated with the workpiece because the context is clear. We believe that the full phrase is what's important, not just the word tracking data, but there is no clear definition of that phrase in the specification. What we're saying... I guess it's the full phrase is tracking data associated with the cutting tool and the workpiece. Right, and there doesn't seem to be a dispute about the cutting tool tracking data in this case. We were just talking about that there's tracking data that has to be associated with the workpiece. That's the part of that phrase that's in dispute, and you need to know what in this patent that means. What do you care about in its location or position information? If you look, for example, in column nine, line right around 15 to 20, it's talking about the methods and systems that they have, and you can relate or associate the workpiece to a workpiece image. You're imaging it, and there's a real-life workpiece, and you're trying to associate those two because you've got a computer screen and you're trying to help the surgeon make a decision about what to cut and what not to cut. It says you can track the workpiece and the cutting tool, and then transform the tracked positions of the cutting tool and the workpiece. That's a pretty, in our view, pretty clear implication that when you're talking about tracking the workpiece and the cutting tool, you're tracking their positions, and that's what they care about. Every other example that's pointed to in the board's decision and by the government where other phrases for tracking are used don't have anything to do with the workpiece. They relate to either the cutting tool or something else, and so we believe there was an implicit definition given in this patent specification that should be used in the claim construction process at the board. When you see the phrase in the claim, tracking data associated with the cutting tool and the workpiece, when it comes to tracking data associated with the cutting tool, you acknowledge that that could be a number of different characteristics other than position of the cutting tool. But when it comes to the workpiece part, now the term tracking data and tracking data associated with the cutting tool and the workpiece now necessarily gets narrowed down to one specific characteristic, i.e., the position of the workpiece. Is that right? Yes. So the word tracking data in that phrase will mean two different things with respect to two different nouns. We didn't have a dispute in the lower board about tracking data associated with the cutting tool, but our view is it has to at least include position information for that too. That's the entire point of this system is to know where both of those objects are during the surgery. If you don't know where the cutting tool is and you don't know where the workpiece is, you don't know when they're going to intersect in a way that's not according to the design. The whole point of these is you're cutting a bone, for example, and you've got a target shape that you want to achieve so that you can put an implant in that bone. You want to make sure that if you cut outside of that area that you know it and you tell the surgeon to stop or you take some control. That's what the control element is all about. So it would include at least position information for both. There are certainly other things about the cutting tool you might want to know, and that's the examples in the specification like the motor speed and some other things that might help you control how fast the cutting tool is going. You may want to slow it down if the surgeon is getting close to cutting outside the line. What about the board's other finding that even if it accepted your claim construction, the strain gauges of Taylor do the very thing that you're reciting your claim because in the end, Taylor, yes, it's fixing the bone. That's the intention, but it nevertheless has, it is using the strain gauges to track the bone to make sure the bone doesn't move. So if it's either in position or it's out of position, and as soon as it shifts to any measurable degree, then immediately the cutting tool shuts off. So in that sense, Taylor is doing the same thing that your invention is doing, and it is checking on the location of the bone to make sure the bone doesn't move. So why wouldn't that fulfill this claim limitation? With respect, that's not correct. First of all, this is a system that has to provide the tracking data to the control mechanism. There's no disclosure in Taylor that anything other than a zero, it moved or it didn't move, is provided from the strain gauge to its control mechanism, and there is no information in that data where the bone started from, how far it moved, or if it moved and went back into the same place. So you don't know anything about where the bone is from their system. At most, you know it moved and by a certain amount, but if I'm standing in the middle of- Why isn't that tracking data position? It may be not as precise as your invention, but you know it moved and you said by a certain amount. That's a positional tracking data, isn't it? No, Your Honor, it's not, because you don't know where it started from. It's like saying if you were in the middle of a forest and you- But that's not really... The claim doesn't say you have to know precisely where it is. Even under your definition, you just say you have to know some kind of position. But if you know something moved, then you know that it's not in the same position it used to be. That's positional tracking data. Well, with respect, we meant that the information would be information that would give you a position in a coordinate system. That was the interpretation that we offered before. So you're wanting us to read in even more details to what tracking data means now. Well, no, that's- If you wanted to claim tracking data that gave you a detailed coordinate system, like certain examples in the specification, then you could have put that in specific claims. Couldn't you have? We could certainly. You always have the point that if there is a claim construction dispute coming from a PTAB appeal, that the argument is you could have just amended the claims to say that. Well, I'm not talking about amendments. It seems to me that you're asking us to violate our fundamental principle that we don't read in specific embodiments to limit claim terms when they're not otherwise limited on their face. Your Honor, this court has in many cases found where it's the only embodiment. And I'm not aware of any disclosure where you're tracking the work piece in this disclosure where the in a coordinate system. That's what you need to use so that you can then, according to the claim, transform it into an image system that has coordinates. The whole point, again, is we want to know where it is relative to the cutting tool. So we've got a coordinate system in the computer, and that's what you need to know. You need to be able to figure out- This is really, it seems to me, an important point. A reluctance, as you tell us, to explicitly limit the claims to that which you tell us they should be limited to for, I'm not sure what reason, on the theory that perhaps such a claim would not be retroactively effective. We don't know the answer to that. At the same time, you're asking us for a claim that, at least on its face, interacts with the prior art in a way that you tell us is not the correct construction, but you're not willing to explicitly limit the claim to what you tell us we should, in our minds, limit the claim to. Well, the claim should be a position in a coordinate system over time. That's what the claim construction we offer to the board on page 188 of the appendix. That's the position that the patent owner, we took it before the board. And having the reference to a coordinate system is necessary so you know what it is. Position is only information if it tells you where, within some sort of reference point, coordinate system it is. So that is the construction we've been offering from the beginning in this PTAP appeal. The point we were trying to make in the briefing is it has to at least include position information, and the position, of course, has reference to a coordinate system. Okay, that's it. That's it for the office. Ms. Craven. Good morning, Your Honors. May it please the Court. The board did not err in rejecting a construction of tracking data as limited to data that identifies a position over time in a coordinate system. Now, here we have some claims. They've gone through examination. It's logical that the examiner viewed the claims as the applicant tells us we should view them and the board should view them in light of the specification. Isn't there an obligation to try and resolve this discrepancy? Well, I don't know what the prosecution, we don't have anything about the prosecution history here. We just have the proceedings in the IPR, and the construction that Blue Belt wants to apply to their claims, limiting it to position in a coordinate system over time, is language that is in dependent claims. Dependent claim six limits it to at least three positions, and claim 27 limits it to 40 tracking in a coordinate system. So they have claims that more narrowly define their invention as based on this positional data. It's the scope of claim one, where all you need is a tracker that provides tracking data. The board, I think, correctly said there's nothing in that claim language that limits it to positions over time. If we look at the specification, one of the embodiments is using this OptiTrack system, which is a motion and position tracking system. So the board, it's not limited to position. It can be at least motion. Are there any clues from the original prosecution history as to how either the applicant or the examiner understood the meaning of the phrase tracking data? Tracking data is associated with the workpiece and cutting tool. There was nothing introduced during the IPR about during the prosecution history and how that informed the claim language, and I don't know about the prosecution history standing here today what was argued about particular claim language or the rejections they received. Was this prior art reference Taylor part of the original prosecution? My understanding from the petition that it was not, that it was a new prior art that would be considered by the office for the first time. So Taylor, the board then reasonably identified Taylor with the strain gauge as tracking position of the workpiece. Like an OptiTrack system can do, it can track motion. It can also track position. It's also hard to see, though, once you're tracking motion that you're not necessarily tracking position. I think the broadest embodiment in the specification has a tracker that tracks one position. So tracking data, as Bluebelt argued to the board, was tracking data can be one position. And so if you're tracking motion, you necessarily are tracking there's initial position. The bone is fixed to the fixator. It's at a position. And if it moves to a different position, you are then tracking the motion and tracking a change in position. So even if Bluebelt, I think even if Bluebelt is right and the specification requires it to be at least a position, I don't think that the board understood that to be their position below. But if they're correct, the board's application of the construction relying on Taylor's strain gauge and tracking motion, the inherent in that finding is that there's a tracking of motion in Taylor's system. In Taylor, am I right in recalling that what is going on is the bone is fixed, say in position A. And then while you're using the cutting tool, you're monitoring the position A of the fixed bone. But if the bone ever moves out of that position to any other position, then the cutting tool turns off? That's correct. There's a freeze motion signal. The controller then stops the cutting tool. And so then you have... So Taylor's monitoring not only the location position of the cutting tool itself with some kind of marker, but it's also tracking to see if the work piece, the bone, which is supposedly fixed, moves out of position. That's correct. And if it does, then the tool turns off. That's correct. That's my understanding of it. Yes, that's correct. And the specifications that when they say that they're distinguishing these prior art systems that rely on fixing the bone, that's in the background section. But really we're talking about the objective reach of the claim and the board found it still... There was nothing in claim one that precluded fixation. And in fact, Taylor's system adds the strain gauge to the systems in order to be able to do this tracking. So there's nothing inconsistent with their background section trying to distinguish this type of invention, their invention. But the objective reach of providing a tracker that provides at least one bit of tracking data is anticipated by the Taylor's use of the strain gauge. So unless there's any other questions, I will yield the rest of my time. All right. Thank you, Your Honor. Thank you. Thank you, Ms. Craven. Mr. Bershin. Yes, Your Honor. There was no discussion about the original prosecution because this was the first action on Alex. So there's no light to be shed on what this term meant from the original prosecution. Second point is, in Taylor, everything that was described is correct, but you still don't have a starting point. You don't have an initial position in the computerized system. So all you know is something moved. It may have moved back. And so we just believe that in light of this specification where it's important to know if you're going to have an intersection, the goal of the patent is so that you don't cut beyond what your original plan was. Unless you know where the workpiece started, you are not able to track the workpiece. And that is the key element of this patent over the prior in Claim 1 and Claim 17. There's other claims in the patent for sure, but those claims are trying to get at the concept that you have some way of tracking both cutting tool and workpiece because both can move, in contrast to the fixed system that's described in the background, which is exactly what Taylor is. Taylor was many years before this patent, and this is the kind of system it's referring to when it's talking about systems that are fixed. So unless you all have any other questions, I yield my time. Thank you. Thank you both. The case is taken under submission.